Law Offices of
WENDIE L. ELOVICH, P.A.
180 White Road, Suite 204
Little Silver, New Jersey 07739
(732) 842-3224
Attorney for Plaintiffs



JOYIA MILES,

        Plaintiff,

    vs.

CITY OF NEWARK, CITY OF NEWARK
POLICE DEPARTMENT, DARNELL
HENRY, VINCENT UCCI, ANTHONY
AMBROSE, IRVING BRADLEY JOHN
AND JANE DOES 1-10,

        Defendants.

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: ESSEX COUNTY
DOCKET NO. ESX L 1679-06

Civil Action

COMPLAINT AND JURY DEMAND

Plaintiff, JOYIA MILES, for her Complaint against the Defendants, alleges, as follows:

## GENERAL ALLEGATIONS

1.    Plaintiff, JOYIA MILES (hereinafter "Plaintiff," "Miles" or "Employee"), is an Officer in the Newark Police Department.  Said Employee resides at 584 Thomas Street, Orange, New Jersey 07050.

2.    Plaintiff has been employed from the time of February of 2002.  Miles presents as an African American Employee and, for times alleged, she has suffered severe retaliation for complaining of harassment, or for seeking a resolution of discriminatory activity targeted to her as an African American Employee challenging the authority of the Chain of Command comprised of higher ranked Caucasian Officers.

3.     Defendant, City of Newark (hereinafter "Employer"), has its principal office at 920 Broad Street, Newark, New Jersey 07102.

4.     Said Defendant provides a Police Department Precinct known as the SCTF/NEST where Plaintiff has worked for two years, along with the individual named Defendants, Darnell Henry (hereinafter "Henry") and Vincent Ucci (hereinafter "Ucci". The subject Precinct is located at 43 Dickerson Street, Newark, New Jersey 07102.

5.     Defendants, John and Jane Does 1-10 are, and remain, City of Newark Administrators, employees, agents, subsidiary or other policymaking individuals presently unknown, but to be revealed through the litigation.

6.     For the relevant times, Plaintiff tried to find a reasonable avenue of complaint through the Chain of Command, Internal Affairs, Affirmative Action, and other agents of the Employer, to no avail. For these times, Plaintiff confronted retaliation and received penalties, including discipline charges against her permanent record.

7.     Under N.J.A.C., a municipality, like the City of Newark, may create a police force and provide for its maintenance, regulation and control. The Ordinance has provided for a line of authority related to police functions, for the adoption of rules and regulations for the governing of the force, and for the discipline of its members.

8.     The Employer deliberately chooses to ignore its rules and regulations as would impact the Police Director, Anthony Ambrose, the Chief of Police, Irving Bradley, Sergeant Darnell Henry, Lieutenant Vincent Ucci, offering each of them, and others, liberties to harm the Plaintiff.

9.     Defendant, City of Newark, through its agents, including John and Jane Does 1-10, knew, or were possessed of knowledge, of the material facts intended to

2

harm this Plaintiff and did nothing to oversee or monitor their Police Department operations where Plaintiff reported, and then failed to discipline those who violated their rules and regulations so as to harm Plaintiff, and the Defendant City of Newark is liable *respondeat superior.*

## FIRST COUNT

### Sexual Harassment and Other Harassment

1.      Plaintiff repeats and realleges the General Allegations, as if set forth at length herein.

2.      Since employment, Plaintiff has refused to sleep around, have sex, or ingratiate herself to her superiors with sexual attention. As a resultant effect, plaintiff has been assigned to unpopular work assignments, graveyard shifts, and certain Officers have refused to work with her.

3.      Before 2004, Plaintiff already knew she had to accept a difficult work environment, but nothing prepared her for the internal harassment and/or sexual or gender harassment she would encounter as a female Police officer challenging the methods and practices openly or covertly permitted and condoned in the SCTF/NEST.

4.      On June 29, 2004, at or about 11:30 P.M., Plaintiff was physically and verbally assaulted by Darnell Henry, then a well known and popular Sergeant in the Newark Police Department.

5.      For the time of the incident Miles was on duty working in the scope of her duties. Henry was in street clothes, off duty, at a bar, where he was found to be having a domestic violence incident with his wife. Both individuals were drinking in the bar owned by Henry.

3

6.      Miles was patrolling the area without a partner when a Newark citizen ran up to her and indicated there was a fight at the bar. The Plaintiff responded at or about 10:00 P.M.

7.      At such time, Henry's private vehicle was illegally parked and Henry did not want to move it. Said Officer utilized his higher rank to inform Plaintiff he was her superior officer. Henry created a physical altercation with Miles, grabbing and pulling her arms to prevent her from duly issuing a summons in violation of N.J.S. 2C:29-1. Miles was also hit in the chest and verbally lambasted and cursed by Henry, with ongoing threats if she wrote him a ticket.

8.      At one point, Miles had to actually break away from Henry's grip and call for police assistance. There was absolute turmoil in the bar with the wife fearing for her life and leaving the scene.

9.      It was a sanitation worker, who actually came to the aid of Miles until the other units arrived. EMS was notified that there was a crime scene victim, Miles, to be brought to the University Hospital for treatment of her injuries.

10.    Plaintiff had numerous bruises, contusions, swelling and scratches from her physical altercation, but she also began to suffer migraines, sleeplessness, anxiety and torment, which caused her to remain out of work.

11.    In the end, Plaintiff had permanent scarring at her right arm and required follow-up with her primary physician for ongoing serious injuries. It was made worse by the way the Employer's agents mishandled the incident and its adverse impact upon her.

4

12.     Miles was required to take "conflict resolution" and "verbal judo" classes, although it was Darnell Henry who was intoxicated and had to be arrested for the incident.

13.     There was initial discussion for an Internal Affairs investigation, however, Miles was not interviewed nor contacted for any harm inflicted upon her. Instead, she was harassed during her sick leave, and for her return.

14.     Further, Plaintiff confronted retribution and reprisal activity for seeking an Internal Affairs investigation on her own.

15.     Municipal charges were filed against Sergeant Henry, but Plaintiff was not notified of the Court date and, in consequence, a bench warrant issued against Plaintiff for failure to appear in Court.

16.     Plaintiff's Precinct, through its agents, carried out their typical methods and tore up her notification. Then, Plaintiff was compelled to act to protect herself to have Internal Affairs recall the Court's bench warrant.

17.     There is no plausible excuse for Plaintiff not to receive timely notification of her obligations before the Court, through the employer's agents, except for intentional malfeasance and reprisal activity.

18.     Unequivocally, the employer's agents must notify all employees of required Court appearances. Their agents have a duty to ensure that Officers like Plaintiff appear in Court.

19.     Plaintiff did not live down that incident, although she kept a low profile and complied to all her duties. Certain Officers developed an attitude towards her and continued to make retaliatory comments or contrive disputes, but Plaintiff tried to ignore

5

all such adverse activity until she found herself being bullied and tormented by Defendant Vincent Ucci, who regularly ran the roll call.

20. The incident began at 3:45 P.M. when Plaintiff arrived early for roll call on June 16, 2005. Out of the blue, the Lieutenant began a conversation with Miles, stating: "He did not appreciate people calling him about Joyia Miles being able to play softball for the SCTF/NEST."

21. Plaintiff was truly surprised that any such communication occurred and indicated she had no idea who would have contacted the Lieutenant or made any request for her to play softball, but Defendant Ucci could not be appeased no matter how she tried.

22. Said Defendant Ucci became verbally and mentally abusive to Plaintiff, cursing at her. Plaintiff remained respectful and quiet, although roll call had not even begun. She suffered the tirade of her boss in silence, fearing to provoke him, and left when appropriate since she was so early.

23. With the start of the roll call, Plaintiff hoped the incident would be over, but it was not. Defendant Ucci began to taunt and denigrate Plaintiff before her peers. He announced, sarcastically, "Miles will be playing softball so we need someone to cover her grid" and Plaintiff watched as her peers responded as if to mock her.

24. Humiliated and shamed before her peers, Plaintiff meekly stated: "She would not be playing so as to remain available for assignment."

25. Again, Lieutenant Ucci began screaming at her, but this time before all the Officers in attendance. Defendant Ucci ranted, to Plaintiff's detriment, cursing repeatedly and belittling and ridiculing her with the preposterous thought that Miles

6

might play softball for the SCTF/NEST or consider herself challenging his words. The situation was calculated to mortify Plaintiff, as if she had no greater purpose on the Employer's payroll and the goal was accomplished.

26.    For the whole scene, Plaintiff tried to remain silent, but she was obviously upset at being singled out, and Defendant Ucci took advantage of her shame and lambasted her, repeatedly, knowing the adverse impact.

27.    This time, Plaintiff decided she could not ignore the severe hostile work environment and she presented a 1001 Administrative submission detailing the inappropriate reprisal activity that she had received from this superior Officer acting contrary to the stated rules and regulations.   It followed that Defendant Ucci and Lieutenant Darrin Maresca then processed charges against Plaintiff after she submitted.

28.    Thereafter, Miles booked off for stress, knowing there was not an Officer who would possibly work or partner with her except for a single individual, Christopher Bowles.   Officer Bowles was on vacation but, when he returned, Bowls faced harassment for his ongoing association with Miles and he had to file his own complaint.

29.    There were ongoing events of retaliation when Plaintiff returned to the workforce to cover-up the harm which had been imposed on Miles.  Plaintiff was always threatened with departmental charges and false write-ups to make Miles appear blameworthy in lieu of the actual wrongdoers.

30.    For these times, Plaintiff has been absolutely respectful and observant of her duties and assignments.  She tried to transfer to the Vice Squad for assignment, knowing she had already established the necessary Detective status, but Caucasian male bosses deliberately held her back as a punishment designed to make her quit.

7

31. Based on the record being made against her, Plaintiff will not advance in the Vice Squad, or anywhere else in the Precinct, as calculated by Defendants, including John and Jane Does 1-10.

32. Plaintiff has absolutely no assigned duties as a Detective since advancement at 2004, although she has obeyed all orders and directives.

33. Joyia Miles is quite noticeably the first to arrive for roll call and the last to leave her shift.

34. Defendant (Lieutenant) Ucci, along with other high ranked Officers of the SCTF/NEST, cannot fail to notice Plaintiff's total dedication to job results in the field, although she does not often have a partner to share the burden of work like other police officers at the SCTF/NEST.

35. Miles is adversely treated, like other African American female police officers before her at the SCTF/NEST, to a severe and discriminatory hostile work environment because she has tried to stand up for her rights to a proper investigation.

36. Most times, Plaintiff has been so concerned for her career that she has tried to seek polite sidebars to articulate illegal conduct or conduct unbecoming police officers, and, more particularly, high ranked officers, but no positive results occur.

37. Instead of establishing corrective measures, Plaintiff has always been made a victim, all over again. There is no effort for confidentiality or protections of Plaintiff pursuant to standard rules and protocol.

38. There is not a possible fair Internal Affairs Division investigation geared towards female police officers' complaints like that of Joyia Miles.

8

39.     The Employer's agents routinely reject her complaints or ignore her interest in serving as a viable witness or naming witnesses to substantiate Miles' allegations for each incident she has reported to John and Jane Does 1-10, Internal Affairs, Affirmative Action or any Defendant herein.

40.     The Employer has set up agents and agencies as "mere window dressing" and not to resolve Plaintiff's or other African American or Hispanic employees' complaints. Although they pretend there is an equal opportunity employment policy integral to the Employer's Newark Police operations, the opposite is true.

41.     The Employer, through its agents, knows its' neighborhoods require a diversified minority workforce, but management caters to a more limited Caucasian group running operations for years, and there is a definite mandate to abide the Blue Code of Silence or become punished.

42.     Plaintiff, Joyia Miles, has not easily chosen to break her silence, but she has suffered quietly, for all her years of employment, a sexually hostile work environment where she would not participate. As an African American female, she has paid a heavy penalty of retribution.

43.     The President of the Fraternal Order of Police ("FOP"), Derrick Hatcher, has tried to obtain follow-up resolution pertaining to Plaintiff, but he obtained charges, himself, by Lieutenant Ucci just for supporting Plaintiff.

44.     Said Union Advocate, Derrick Hatcher, has not been successful on behalf of Miles because he tries to point out: (i) the lack of professionalism; (ii) Lieutenant Ucci berating Plaintiff during roll call with derogatory language; (iii) the Standing General

9

Orders, Department policies, Rules and Regulations existing for leadership to impose; and (iv) actions which break down the morale of Ucci's command.

45. For times the FOP becomes involved for corrective remedies, there is no result for the police officers he represents. Discussions go nowhere. In the context of Joyia Miles, the Union recognized the non-professional approach to a minor situation would advance if Director Ambrose did not intervene for immediate resolution.

46. Defendant, Lieutenant Ucci, used his position of authority to continue to harass Plaintiff with an intimidating and offensive hostile work environment. Plaintiff has been ridiculed as Ucci and other police officers scrutinize her daily behavior and then gossip about her in the Police Department.

47. Since Plaintiff abides all orders of her superior ranked officers, Defendant Ucci has been reduced to contriving false accusations about Miles.

48. Another charge occurred for her failing to salute Ucci, on or about August 12, 2005; and Plaintiff was targeted for punishment different than the other male officers standing directly in front of her walking past Ucci.

49. Defendants permitted Plaintiff to be charged with a violation of Newark Police Rules and Regulations. Rules are applied differently to female African American police officers like Plaintiff, who dare to seek recognition of their problems.

50. All this conduct would not have occurred but for Miles' perceived vulnerable status. The conduct was severe and pervasive enough to make a reasonable African American woman believe the condition of her employment had altered. The working environment was hostile and extremely abusive, including the false statements of Ucci and others who spread false statements.

10

51.     No matter how offended Plaintiff appeared or tried to defend her reputation, she has been mocked and ridiculed. Further, Miles is shunned and ostracized, as if she had become blameworthy since the Defendant's Administration will do nothing for her.

52.     Moreover, Defendants have greatly contributed to Plaintiff's awkward and diminished status since Plaintiff cannot find any corrective remedy before John or Jane Does 1-10, Internal Affairs or Affirmative Action. Her complaints are flatly turned down.

53.     For all these times, it appeared certain the Police Department and the critical Employer's agents, condoned and accepted the sexual/gender, or otherwise racist, hostile work environment and other harassment being imposed on this Plaintiff contrary to N.J.S.A. 10:5-1 TO 10:5-42, et seq.

54.     As further proof, Joyia Miles has been held back from any transfer or advancement based on her detective job status, or other normal financial incentives being offered to other police officers despite her dedicated service for 3.5 years.

55.     Each act of harassment was done, either with malice, with a wanton disregard of the Plaintiff victim's personal rights and sensitivities, or with a foreseeability of intended harmful consequences. Moreover, Defendants' agents were successful in their efforts to ruin this Plaintiff.

56.     The Defendant Employer, through its agents, remains responsible:

(a) For all acts and conduct of the individually named agents within the scope of their authority;

(b) For failing to control their agents' conduct;

11

(c)   For permitting such agents to wear any police uniform or cloak of authority and offering each one power to carry out retaliatory or discriminatory actions, whether from the SCTF/NEST, Internal Affairs, or Affirmative action.

(d)   For promoting discriminatory or adverse employment conditions for their own illegal objectives and to the detriment of the Plaintiff.

(e)   For trying to establish termination of the Plaintiff or, at minimum, a false discipline record upon which they could punish her through time.

57.   As a proximate result of the foregoing, the Plaintiff has suffered damages, a severe extreme emotional distress, loss of wages, fringe benefits, promotions, along with quality of life benefits.

58.   By reason that Defendants' agents' actions were intentionally malicious, retaliatory and sanctioned in contradiction to establish protocol and procedures, Plaintiffs seek all damages, including compensatory and punitive.

WHEREFORE, Plaintiff demands judgment for:

a.     Damages, compensatory and punitive and interest accruing;

b.     attorney's fees;

c.     costs of suit;

d.     for a Declaratory Judgment stating that the City of Newark must take action immediately to remove the named Defendants from their official duties;

e.     for a Declaratory Judgment stating that City of Newark must protect Plaintiff against any further reprisal activity, adverse treatment, disparate treatment or impact and otherwise protect against a discriminatory bias program being implemented against Joyia Miles, contrary to the New Jersey LAD or other statutory provisions;

f.      for a Declaratory Judgment for the City of Newark to take specific corrective action against those who have deliberately utilized their authority to harm Plaintiff in the workplace, including Darnell Henry, Vincent Ucci, Anthony Ambrose, Irving Bradley and John and Jane Does 1-10;

g.      for a Declaratory Judgment for the State of New Jersey to intervene and assume control over all operations of the SCTF/NEST so as to effectuate serious non-discriminatory, non-retaliatory changes and to protect Plaintiff, Joyia Miles, from present governing authorities, including John and Jane Does 1-10;

h.      AND for such other relief as the Court may deem equitable and just.

## SECOND COUNT

### Battery/Assault

1.      Plaintiff repeats and realleges the General Allegations and First Count, as if set forth at length herein.

2.      Plaintiff, Joyia Miles, is an Officer of the Newark Police Department and she was injured on June 29, 2004, at 11:30 P.M., when she was physically battered and verbally assaulted by Darnell Henry, a Sergeant in the Newark Police Department who had an intent to harm her.

3.      A Notice of Tort claim for the incident was timely filed by Plaintiff's former counsel, Algeier Woodruff pursuant to N.J.S.A. 59:8-4.

4.      As aforementioned, Miles was on duty, working in the scope of her duties to patrol the area, alone, although this area requires a two man patrol since it runs from Stratford to Clinton Avenue.

13

5.     Defendant, Darnell Henry, owned a bar/tavern and was off duty causing a domestic violence scene with his own spouse, such that a patron ran for police assistance knowing authorities had to be contacted to prevent further violence.

6.     Plaintiff responded within the scope of her duties and the spouse left the scene fearing for her safety. Defendant Henry could not be calmed down.

7.     Henry used his higher rank as a Sergeant in the employ of Defendants to verbally and mentally assault Plaintiff and, then, caused an intentional physical battery upon Plaintiff's person for no reason other than she was writing him a summons pursuant to N.J.S. 2C:29-1, as aforementioned.

8.     Miles was intentionally hit in the chest and Defendant Darnell Henry kept grabbing and pulling her arms. Initially, Plaintiff suffered bruises, contusions, swelling and scratches to her right arm, but Henry's force was so great that there ended up permanent scarring with lasting injuries, including post-traumatic stress disorder, anxiety and other symptoms.

9.     Darnell Henry was a public employee, who caused such injury to the Plaintiff. Plaintiff actually called for police assistance by reason of all the abuse and turmoil caused by this employee.

10.     Plaintiff was aided by a sanitation worker until other police units arrived and discovered Darnell Henry, intoxicated, causing the foregoing.

11.     Photographs were taken of Plaintiff's injuries at the crime scene.

12.     EMS had to be notified there was a crime scene victim, namely, Joyia Miles, to be brought to the University Hospital for treatment of her injuries.

14

13.     Plaintiff has required follow-up medical care and attention, including her right arm, and for migraines, sleeplessness and emotional distress concerning the incident and the aftermath, with anxiety attacks causing her to remain out of work for two months.

14.     Plaintiff was ordered to take "conflict resolution" and "verbal judo" classes, although Darnell Henry was intoxicated and he caused her injuries.

15.     Said Officer, Darnell Henry, was purported to be arrested for this incident and subject to punishment, but Plaintiff does not believe any punishment occurred.

16.     Plaintiff sought an official investigation, but Internal Affairs and John and Jane Does 1-10 ignored her despite her injuries.

17.     Plaintiff furnished complete identification of all those witnesses observing the first (crime) incident, including the sanitation worker, EMS rescue squad workers, and a list of neutral citizens reporting the domestic violence and battery upon her person. (Written statements were taken for follow-up investigation.)

18.     Plaintiff was never interviewed nor were her witnesses, and she was not contacted with any results.

19.     Instead, Plaintiff suffered retaliatory activity and her becoming promoted to Detective status in 2004 had absolutely no meaning.

20.     Plaintiff seeks damages and punitive damages based on the foregoing malice, battery, assault, disregard of her rights as a crime victim, and based upon the harmful consequences.

21.     As a proximate result of the foregoing, Plaintiff has suffered damages, a severe extreme emotional distress, loss of wages, fringe benefits, promotions, along with quality of life benefits.

22.     By reason that Defendants' agents' actions were intentionally malicious, retaliatory and sanctioned in contradiction to establish protocol and procedures, Plaintiffs seek all damages, including compensatory and punitive.

WHEREFORE, Plaintiff demands judgment for:

a.     Damages, compensatory and punitive and interest accruing;

b.     attorney's fees;

c.     costs of suit;

d.     for a Declaratory Judgment stating that the City of Newark must take action immediately to remove the named Defendants from their official duties;

e.     for a Declaratory Judgment stating that City of Newark must protect Plaintiff against any further reprisal activity, adverse treatment, disparate treatment or impact and otherwise protect against a discriminatory bias program being implemented against Joyia Miles, contrary to the New Jersey LAD or other statutory provisions;

f.     for a Declaratory Judgment for the City of Newark to take specific corrective action against those who have deliberately utilized their authority to harm Plaintiff in the workplace, including Darnell Henry, Vincent Ucci, Anthony Ambrose, Irving Bradley and John and Jane Does 1-10;

g.     for a Declaratory Judgment for the State of New Jersey to intervene and assume control over all operations of the SCTF/NEST so as to effectuate serious non-

discriminatory, non-retaliatory changes and to protect Plaintiff, Joyia Miles, from present governing authorities, including John and Jane Does 1-10;

h.   AND for such other relief as the Court may deem equitable and just.

### THIRD COUNT

### Negligent/Intentional Infliction of Emotional Distress

1.   Plaintiff repeats and realleges the General Allegations and the First and Second Counts, as if set forth at length herein.

2.   Plaintiff, Joyia Miles, has been subjected to a sexually/racist hostile work environment almost from the time she became a Newark Police Officer, and there is no reasonable avenue of complaint without putting an end to her career.

3.   Since employment, Plaintiff has adamantly refused to sleep around, have sex, or ingratiate herself to her superiors with sexual attention, which is expected of her as an African American female police officer, or any minority status, as a female.

4.   As a resultant effect, for years Plaintiff has been assigned to unpopular work assignments, graveyard shifts and certain officers have refused to work with her.

5.   Plaintiff is falsely labeled as having "an attitude" because she does not fraternize within the workplace and become known as sexually loose and available to males in the Chain of Command.

6.   Before 2004, Plaintiff already knew she had to accept a difficult work environment, but nothing prepared her for the internal harassment, sexual/gender harassment, she would encounter as a female African American police officer challenging the methods and practices openly or covertly permitted and condoned in the SCTF/NEST.

17

7.   As aforementioned, Plaintiff suffered an intentional battery, verbal and mental assault by an intoxicated Sergeant, Darnell Henry.

8.   Thereafter, Plaintiff was subject to severe harassment and retaliatory actions calculated to silence her under the Blue Code, and, when she stood up for corrective remedies, the situation became extremely hostile due to her status in the Defendants' workplace as an African American female police officer.

9.   Lieutenant Ucci has become known for his discriminatory animus targeted to African American female police officers and he has used the word "nigger" to describe one such victim in the past. For another female African American police officer, he raised his own gun to threaten her life and, then, he has been outrageous and extreme in his adverse treatment of Plaintiff, as aforedescribed, for a significant period of time.

10.   The conduct of the Defendants, whether it be the City of Newark/Newark Police Department, John and Jane Does 1-10, Anthony Ambrose, Irving Bradley and others, in condoning and permitting this conduct is totally outrageous and extreme and not permitted by law.

11.   Plaintiff has always been punished instead of the true wrongdoers and no investigation occurs to protect her, although she is qualified for a protected status.

12.   All Defendants' agents (up and down the Chain of Command) should have been trained for assignment to the SCTF/NEST, and, further, for roles in the Internal Affairs Unit or Affirmative Action Unit, but there has been blatant negligent or intentional departure from proper training and any proper monitoring of supervisory controls or the command by reason of wrongdoing and intentional cover-up.

18

13.    As a proximate result, Plaintiff's rights as a citizen, or as a uniformed police officer protected by statutory and constitutional dictates and rules and regulations, have been impacted.

14.    Defendant, City of Newark, through its agents, or John and Jane Does 1-10, were possessed of knowledge of the material facts seriously contemplated to harm this Plaintiff and did nothing to oversee their Police Department operations or that of the specialized units, Internal Affairs or Affirmative Action, knowing, or should be knowing, Plaintiff's standing amongst fellow officers, peers or supervisors, past, present and future, has been ruined.

15.    The aforementioned intentional or negligent conduct of the Defendants, City of Newark/Newark Police Department, Darnell Henry, Vincent Ucci, Anthony Ambrose, Irving Bradley, and others, including John and Jane Does 1-10, caused Plaintiff to suffer severe extreme emotional distress.

16.    The said conduct of the Defendants, City of Newark/Newark Police Department, Darnell Henry, Vincent Ucci, Anthony Ambrose Irving Bradley, and others, including John and Jane Does 1-10, was calculated to cause and, in fact, did cause Plaintiff to suffer permanent severe emotional distress.

17.    As a proximate result of the foregoing, Plaintiff has suffered damages, a severe extreme emotional distress, loss of wages, fringe benefits, promotions, along with quality of life benefits.

18.    By reason that Defendants' agents' actions were intentionally malicious, retaliatory and sanctioned in contradiction to establish protocol and procedures, Plaintiffs seek all damages, including compensatory and punitive.

WHEREFORE, Plaintiff demands judgment for:

a.    Damages, compensatory and punitive and interest accruing;

b.    attorney's fees;

c.    costs of suit;

d.    for a Declaratory Judgment stating that the City of Newark must take action immediately to remove the named Defendants from their official duties;

e.    for a Declaratory Judgment stating that City of Newark must protect Plaintiff against any further reprisal activity, adverse treatment, disparate treatment or impact and otherwise protect against a discriminatory bias program being implemented against Joyia Miles, contrary to the New Jersey LAD or other statutory provisions;

f.    for a Declaratory Judgment for the City of Newark to take specific corrective action against those who have deliberately utilized their authority to harm Plaintiff in the workplace, including Darnell Henry, Vincent Ucci, Anthony Ambrose, Irving Bradley and John and Jane Does 1-10;

g.    for a Declaratory Judgment for the State of New Jersey to intervene and assume control over all operations of the SCTF/NEST so as to effectuate serious non-discriminatory, non-retaliatory changes and to protect Plaintiff, Joyia Miles, from present governing authorities, including John and Jane Does 1-10;

h.    AND for such other relief as the Court may deem equitable and just.

### FOURTH COUNT

### Defamatory Injury to Reputation

1.    Plaintiff repeats and realleges the General Allegations and the First, Second and Third Counts, as if set forth at length herein.

2.      From the time Plaintiff refused to participate in a sexually hostile work environment or a racist hostile work environment, she has been labeled with "an attitude" although she was totally compliant to her work duties and always respectful.

3.      As a resultant effect, Plaintiff was assigned to unpopular work assignments, graveyard shifts and certain officers refused to work with her.

4.      For numerous occasions during her employment, Plaintiff has not had partners, different than male police officers, and she is engaged in dangerous work just like those male police officers.

5.      It is common practice for female minority police officers to capitulate to the work conditions, knowing Defendants' agents will make false, defamatory statements about them and, then, they will have to live down the defamatory injury to their reputation.

6.      In all instances, Plaintiff was compelled to fend for herself. For her shift, she had one individual who would voluntarily partner with her and the others refused based on her ruined reputation.

7.      During Plaintiff's career at Defendants' workplace, Plaintiff suffered sexual harassment and other harassment while challenging the adverse treatment she received within the SCTF/NEST.

8.      At June 29, 2004, Plaintiff suffered a physical altercation, verbal and mental assault, by Officer Darnell Henry, which left her with permanent injuries, physical scarring and emotional upset due to the way it was handled in the Precinct.

21

9.    Miles was actually required to take "conflict resolution" and "verbal judo" classes, although it was Darnell Henry who was intoxicated and had to be arrested.  By all accounts, he was not punished.

10.    The reported situation of domestic violence and Plaintiff's physical injuries were covered up rather than adjudicated for criminal punishment of a male police officer.

11.    Miles tried to seek an Internal Affairs investigation for herself, but she was not interviewed nor contacted for any harm inflicted upon her.  Instead, Plaintiff was harassed during her sick leave and, for her return to work, false defamatory statements of fact were circulated about Miles.

12.    Through the time of the situation of Lieutenant Vincent Ucci, as already described, Plaintiff confronted retribution and discriminatory reprisal activity as if being a female African American police officer left her completely vulnerable in the SCTF/NEST.

13.    The very fact that Lieutenant Vincent Ucci bore a discriminatory animus towards Plaintiff and acted to denigrate her at roll call by repeatedly cursing at Joyia Miles, as if she had become an inhuman object, had absolutely no interest to the Employer's agents.

14.    Rather, Ucci was permitted ongoing liberties to mortify and humiliate Plaintiff on his own whim and no matter how contrived and malicious.  Said Ucci has a known problematic work history.

15.    Defendant Ucci went so far as to charge the Plaintiff for failure to salute him when there were no facts to singularly target Plaintiff for any wrongdoing.

22

16. Defendants' agents knew, or should have known, Vincent Ucci's propensity for discriminatory behavior because Plaintiff, Joyia Miles, was his third known African American female victim within the workforce.

17. For all times relevant that Plaintiff sought an investigation, the outcome was predictable to cover-up any search for the truth.

18. Defendants' agents have aided each other in their disloyalty to the Plaintiff and to intentionally ruin her reputation.

19. Defendants' agents have intentionally misstated the facts and acted in reckless disregard of its truth or falsity.

20. All statements regarding the Plaintiff were not possibly made for a common interest nor communicated under any reasonable belief that the Plaintiff would not be harmed.

21. Defendants' agents deliberately breached any policy of good faith and fair dealing such that the Plaintiff fears that she is, and shall remain, compromised forever in her job functions on a daily basis as she pursues her official duties or interacts with the community at large.

22. As a proximate result of the foregoing, Plaintiff seeks all damages, including special damages, which can be proven for time of trial.

WHEREFORE, Plaintiff demands judgment for:

a. Damages and special damages;

b. attorney's fees;

c. costs of suit; and

d. for all other relief deemed appropriate by Court.

23

## FIFTH COUNT

### Breach of Contract/Intentional Violation of Civil Rights

1.    Plaintiff repeats and realleges the General Allegations and the First, Second, Third and Fourth Counts, as if set forth at length herein.

2.    For all times mentioned, Plaintiff should appear in the workplace as a protected female African American employee, but her rights have been virtually eliminated, although Plaintiff is purportedly protected by firm Collective Bargaining Agreements.

3.    Further, the Newark Police Department pretends to put out Director's Memorandum from Anthony F. Ambrose, III, and to enforce the New Jersey Constitution, U.S. Constitution and other legislative mandates, whether it be pursuant to N.J.S.A. 10:5-1 to 10:5-42, N.J.A.C. 40A:14-118, or Title VII but the Plaintiff's actual facts prove there is a cover-up and their written policies mean nothing.

4.    Defendants, or their agents, dare to breach every Agreement, procedure or regulation in place to protect this Plaintiff and then cover-up their wrongdoing.

5.    In all incidents impacting the Plaintiff in her workplace, Defendants, including their Administrators, John or Jane Does 1-10 (or their agents), Anthony F. Ambrose or Irving Bradley (any or all of them) have failed to maintain the protocol, rules and regulations for the governing of their police force, Internal Affairs, Affirmative Action or other agencies and, more importantly, for the discipline of its members adversely treating the Plaintiff herein.

6.    As aforedescribed, there has been mixed motives as to why employees like Defendants agents mistreating the Plaintiff have not been disciplined for conduct

24

unbecoming a public employee, or, for discriminatory conduct constituting harassment, sexual harassment or a discriminatory or retaliatory hostile work environment with false charges or ongoing threats of charges and termination.

7.    For all these times, there has been no reasonable avenue of complaint for this Plaintiff, as if Defendants' agents intentionally violate her rights.

8.    The complained of conduct of all Defendants' agents would not have occurred but for Plaintiffs perceived vulnerability as a female African American employee who can be ignored.

9.    For all times stated, the conduct was severe and pervasive enough, including retaliatory action, to make a reasonable female African American employee believe her condition of employment has been altered and she no longer has any constitutional rights or liberties or protection of the State or Federal laws, or any local rules or regulations or contract provisions maintained by her Union.

10.    Police Officers identified by the Plaintiff for violating her rights have been higher ranked officers, and they appear to be beyond investigation or any discipline. In all events, they are negligently retained in their high positions, despite wrongdoing to the Plaintiff with a specific focus on Defendant Ucci and Darrin Maresca.

11.    Further, Plaintiff believes her rights are ignored because she is not a male police officer nor Caucasian or Italian, the preferred profile within Newark.

12.    Certainly, Plaintiff's rights must be protected within police functions and she should not have to be intimidated by superior police officers strictly because she is an African American and female.

13.     Defendants, including the Police Director, Anthony Ambrose III, and the Chief of Police, Irving Bradley, know there is an increase in the number of harassment and sexual harassment complaints received at the Office of Affirmative Action from Departmental personnel and their recent response has been to covertly encourage a failure of investigation.

14.     The Employer's highest agents have officially recognized, when this form of employee misconduct is permitted, and condoned, by Department personnel, it becomes illegal and a discriminatory condition of employment, but, in total effect, the Employer condones and tolerates various forms of harassment, including sexual/gender and ethnic discriminatory practices within the workplace.

15.     The goal is always to cover-up when conditions are exposed. The State Attorney General's Executive policies are not enforced nor is local policy requirements.

16.     The pretense posture that any form of retaliation directed towards employees will be dealt with severely is utterly false, but all supervisory personnel became responsible for enforcement under standing Orders, and established standard operating procedures, at the City of Newark, for reporting, investigation and resolution of all complaints, like that of the Plaintiff before the filing of the within lawsuit.

17.     Therefore, Defendants' agents could not ignore Plaintiff's complaints nor retaliate as they did with racial profiling and punitive measures to impact Plaintiff's morale, motivation and job performance.

18.     Defendants, including John and Jane Does 1-10, do not properly train, supervise or monitor the Newark Police Department operations to prevent the foreseeable harm to Plaintiff, or otherwise act to protect her.

26

19.     Additionally, there is the City of Newark Municipal Council's failure to oversee the Newark Police Department in accord with <u>N.J.S.A.</u> 14-118.

20.     As greater proof, Plaintiff was rejected at Internal Affairs and Affirmative Action offices and she was routinely ignored for her complaints.

21.     There have not been any good faith efforts to comply with Federal, State, or local mandates regarding the protection of "human rights," civil rights or to prevent discrimination in Plaintiff's situation.

22.     For the times Plaintiff should have been subject to confidentiality or investigation of her complaints, her privacy and reputation has been exploited by the Employer's agents to the fullest extent possible to ruin her as a credible victim.

23.     Certainly, the Employer's agents should have been trained to know the proper parameters of a fair investigative process, including retaliation, protection of the party, confidentiality, privacy and to preserve the reputation of the Plaintiff/victim and to take remedial action to correct wrongdoing imposed against Plaintiff, but no agent acted in such manner, ever.

24.     There was never any recognition of the Plaintiff's rights of any kind, nor to discipline the wrongdoers with suspension, with or without pay, termination, referral to the criminal justice system for prosecution, despite the outrageous and egregious actions, inactions, omissions and discriminatory malfeasance of Defendants and their agents, as aforedescribed.

25.     As a proximate result of the foregoing, Plaintiff has suffered damages, a severe extreme emotional distress, loss of wages, fringe benefits, promotions, along with quality of life benefits.

26. By reason that Defendants' agents' actions were intentionally malicious, retaliatory and sanctioned in contradiction to establish protocol and procedures, Plaintiffs seek all damages, including compensatory and punitive.

WHEREFORE, Plaintiff demands judgment for:

a. Damages, compensatory and punitive and interest accruing;

b. attorney's fees;

c. costs of suit;

d. for a Declaratory Judgment stating that the City of Newark must take action immediately to remove the named Defendants from their official duties;

e. for a Declaratory Judgment stating that City of Newark must protect Plaintiff against any further reprisal activity, adverse treatment, disparate treatment or impact and otherwise protect against a discriminatory bias program being implemented against Joyia Miles, contrary to the New Jersey LAD or other statutory provisions;

f. for a Declaratory Judgment for the City of Newark to take specific corrective action against those who have deliberately utilized their authority to harm Plaintiff in the workplace, including Darnell Henry, Vincent Ucci, Anthony Ambrose, Irving Bradley and John and Jane Does 1-10;

g. for a Declaratory Judgment for the State of New Jersey to intervene and assume control over all operations of the SCTF/NEST so as to effectuate serious non-discriminatory, non-retaliatory changes and to protect Plaintiff, Joyia Miles, from present governing authorities, including John and Jane Does 1-10;

h. AND for such other relief as the Court may deem equitable and just.

## SIXTH COUNT
### Negligent Failure To Properly Train And Supervise
### Or To Oversee Police Department Activities

1.     Plaintiff, Joyia Miles, repeats and realleges the General Allegations and the First, Second, Third, Fourth and Fifth Counts of the Complaint, as if fully set forth at length herein.

2.     The Defendants, City of Newark and/or John Does 1-10 knew, or, should have known, and monitored how the Defendant Officers treated Plaintiff in regard to her issues and complaints.   Under all circumstances, there should have been proper procedures and protocol in place to protect City of Newark police officers like the Plaintiff Miles.

3.     As aforedescribed, Plaintiff suffered by the City of Newark's (or John and Jane Does 1-10) failure to oversee and monitor the Police Department in accord with N.J.S.A. 40A:14-188 or other statutory authority and contracts with the Union.

4.     All Defendants' agents (up and down the Chain of Command) should have been trained for their assignments, and to monitor the performance of Superior Officers like Ucci.   Said Defendant was known for causing problems in the workplace.   It was commonly known that Ucci detested African American employees.

5.     For times relevant to this lawsuit, Defendants' agents should have proceeded to proper investigations to resolve Plaintiff's problems and, more particularly, because the Union became involved knowing that Plaintiff's problems were becoming worse for their inattention.

29

6.    Agents up and down the Chain of Command ignored or retaliated against Plaintiff Miles. Other agents in the Internal Affairs Unit or Affirmative Action Unit, did not provide proper investigations or furnish any corrective action on her behalf.

7.    There has been a blatant, negligent or intentional departure from proper training and any supervisory controls or command by reason of wrongdoing.

8.    Upon information and belief, Defendant Ucci has been negligently retained and rehired after proving that he should not be cloaked with any authority as a Police Officer or higher ranked Officer.

9.    For all relevant times, there was a failure to properly train and supervise or conspired intentional or malicious harm calculated to seriously and negatively impact the Plaintiff's standing amongst her fellow officers, peers or supervisors, now, and for the future.

10.    Defendant, City of Newark, through its agents, or John and Jane Does 1-10, were possessed of knowledge of the material facts seriously contemplated to harm this Plaintiff and did nothing to oversee their Police Department operations or that of the specialized units contemplated to investigate for corrective action.

11.    In the final analysis, Plaintiff was planned to suffer as a victim just because she is racially profiled.

12.    Plaintiff suffered the original humiliating and harassing activities, and, then, there was reprisal with deliberate, malicious or wanton disregard of her personal rights and sensitivities as her reputation became ruined with false Departmental charges being made part of her permanent record. This has become common place at the City of Newark, a pattern and practice of abusive activity.

30

13.    Plaintiff seeks damages and punitive damages based on the foregoing malice, wanton disregard of her rights as a victim and based upon the foreseeability of the harmful consequences.

14.    The Plaintiff confronted false charges and ended up with a permanent discipline record, contrary to other Officers who actually pursued a conspiracy of wrongdoing to cover-up their actions.

15.    John Does 1-10 or other such Defendants' agents deliberately turned a deaf ear to any proper investigation of wrongdoing and these Officers have intentional or emotional distress to the Plaintiff.

16.    Strong messages have been sent out to the workforce that officers like the Plaintiff have absolutely no rights to question their superiors' actions, malfeasance or a conspiracy of any kind.  The Defendants' agents can willfully and wantonly abuse anyone they want to target without fear of discipline even if they impose discriminatory action.

17.    As a proximate result of the foregoing, all Defendants, including the City of Newark and John and Jane Does 1-10, remain liable to Plaintiff, *respondeat superior*; and Plaintiff seeks damages for severe and extreme emotional distress, loss of wages, fringe benefits, promotions, along with qualify of life benefits.

WHEREFORE, Plaintiff demands judgment for:

a.    Damages, compensatory and punitive and interest accruing;

b.    attorney's fees;

c.    costs of suit;

31

d.      for a Declaratory Judgment stating that the City of Newark must take action immediately to remove the named Defendants from their official duties;

e.      for a Declaratory Judgment stating that City of Newark must protect Plaintiff against any further reprisal activity, adverse treatment, disparate treatment or impact and otherwise protect against a discriminatory bias program being implemented against Joyia Miles, contrary to the New Jersey LAD or other statutory provisions;

f.      for a Declaratory Judgment for the City of Newark to take specific corrective action against those who have deliberately utilized their authority to harm Plaintiff in the workplace, including Darnell Henry, Vincent Ucci, Anthony Ambrose, Irving Bradley and John and Jane Does 1-10;

g.      for a Declaratory Judgment for the State of New Jersey to intervene and assume control over all operations of the SCTF/NEST so as to effectuate serious non-discriminatory, non-retaliatory changes and to protect Plaintiff, Joyia Miles, from present governing authorities, including John and Jane Does 1-10;

h.      AND for such other relief as the Court may deem equitable and just.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all causes of action.

Law Offices of
WENDIE L. ELOVICH, P.A.
Attorney for Plaintiffs

By: _____
WENDIE L. ELOVICH, ESQ.

Dated: February 2, 2006

32

## DESIGNATION OF COUNSEL

Pursuant to Rule 4:25-4, WENDIE L. ELOVICH, ESQ. is hereby designated as

Trial Counsel for the Plaintiffs in the within matter.

Law Offices of
WENDIE L. ELOVICH, P.A.
Attorney for Plaintiffs

By: _____
WENDIE L. ELOVICH, ESQ.

Dated: February 2, 2006

## CERTIFICATION

Pursuant to Rule 4:5-1 the undersigned certifies that this matter in controversy is

not the subject of any other action pending in any Court of Arbitration forum, nor is any

other action or Arbitration proceeding presently contemplated and all known parties

have been joined in this action.

Dated:   February 2, 2006

Law Offices of
WENDIE L. ELOVICH, P.A.
Attorney for Plaintiffs

By: _____
WENDIE L. ELOVICH, ESQ.

STATE OF NEW JERSEY :
                          SS:
COUNTY OF MONMOUTH:

I, JOYIA MILES, being duly sworn, depose and say:

I am the Plaintiff in the within action; I have read the foregoing Complaint and know the contents thereof; the same is true to my own knowledge, except as to the matters herein stated to be alleged on information and belief, and as to those matter, I believe it to be true.

Dated: February 2, 2006

JOYIA MILES

34